IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JACK A. FAUCETT, ) | Civil Action No. 3:10-3093-JFA-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| MICHAEL J. ASTRUE, COMMISSIONER ) | |
| OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on August 1, 2007, alleging disability as of March 22, 2007. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). After a hearing held on March 31, 2009, at which Plaintiff and a vocational expert ("VE") appeared and testified, the ALJ issued a partially favorable decision on April 2, 2010, finding Plaintiff disabled as of September 28, 2008. The ALJ found that Plaintiff was not disabled prior to September 28, 2008, because the ALJ concluded that work exists in the national economy which Plaintiff could perform.

Plaintiff was 56 years old at the time of the ALJ's decision. He has a seventh grade education, and past relevant work as a truck driver. Plaintiff alleges disability due to cognitive disorder secondary to subarachnoid hemorrhage/traumatic brain injury, cervical and lumbar spine degenerative disc disease, status post right foot fracture, right knee degenerative joint disease, and depression.

The ALJ found (Tr. 12-26):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*).

3. Since the alleged onset date of disability, March 22, 2007, the claimant has had the following severe impairments: cognitive disorder secondary to subarachnoid hemorrhage/traumatic brain injury, cervical and lumbar spine degenerative disc disease, status post right foot fracture, right knee degenerative joint disease, and depression (20 CFR 404.1520(c)).

4. Since the alleged onset date of disability, March 22, 2007, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that prior to September 28, 2008, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work (lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday), as defined in 20 CFR 404.1567(b) except with the following limitations: occasional push/pull with the right lower extremity; never climb ladder/rope/scaffolds; occasionally climb ramp/stairs; frequently balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to hazards; perform simple, repetitive, routine one and two step tasks; and have no contact with the public.

2

6.  After careful consideration of the entire record, I find that beginning on September 28, 2008, the claimant has the residual functional capacity to perform light work (lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday), as defined in 20 CFR 404.1567(b) except with the following limitations: sit/stand/walk up to 2 hours at one time without interruption and total in an 8-hour work day; not need a cane to ambulate; never climb ladder/rope/scaffolds and crawl; occasionally climb ramp/stairs, balance, stoop, knee, and crouch; occasional exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold and heat, and vibrations; perform simple, repetitive, routine one and two step tasks; and have no contact with the public.

7.  Since March 22, 2007, the claimant has been unable to perform any past relevant work (20 CFR 404.1565).

8.  Additionally, prior to the established disability onset date, the claimant was an individual closely approaching advanced age. On September 28, 2008, the established onset date, the claimant's age category changed to an individual of advanced age (20 CFR 404.1563).

9.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

10. Prior to September 28, 2008, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on September 28, 2008, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Prior to September 28, 2008, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

12. Beginning on September 28, 2008, the date the claimant's age category changed, considering the claimant's age, education, work experience, and the above residual functional capacity (light work

      (lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday), as defined in 20 CFR 404.1567(b) except with the following limitations: sit/stand/walk up to 2 hours at one time without interruption and total in an 8-hour work day; not need a cane to ambulate; never climb ladder/rope/scaffolds and crawl; occasionally climb ramp/stairs, balance, stoop, knee[l], and crouch; occasional exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold and heat, and vibrations; perform simple, repetitive, routine one and two step tasks; and have no contact with the public), there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c) and 404.1566).

13.     The claimant was not disabled prior to September 28, 2008, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g)).

The Appeals Council denied the request for review in a decision issued October 8, 2010. Tr. 1-5. Accordingly, the ALJ's decision became the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on December 6, 2010.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

**MEDICAL EVIDENCE**

Plaintiff was involved in a motorcycle accident in March 2007, in which he lost consciousness and was initially "quite confused." He was treated at Greenville Hospital and discharged three days later. He was diagnosed with a closed head injury, subarachnoid hemorrhage, and right foot fracture. Tr. 230. X-rays of Plaintiff's spine revealed no fracture, but showed moderate degenerative disc disease of Plaintiff's mid to lower thoracic spine, moderate degeneration at C4-5 through C6-7, and moderate to severe multi-level degenerative disk disease from L2-3 to L5-S1. Tr. 237, 259-263.

Dr. Charles Kanos, a neurologist, examined Plaintiff on March 30, 2007. Plaintiff reported headaches, short-term memory loss, and low back pain. Plaintiff was noted to be well groomed and able to communicate normally, but was in a wheelchair. Subarachnoid hemorrhage was assessed and Plaintiff was instructed to return if needed. Tr. 315-316, see Tr. 312.

On April 2, 2007, Plaintiff was examined by Dr. Thomas Young, a surgeon. Dr. Young assessed that Plaintiff was doing pretty well, had some bruising over the base of his spine and no tenderness over his sacrum, but had no evidence of any head trauma. Tr. 312.

Plaintiff returned to Dr. Kanos complaining of headaches, memory problems, and a sore lower back on April 13, 2007. Examination revealed that Plaintiff was able to communicate normally, walked with a cane, and had normal station. Dr. Kanos opined that Plaintiff's complaints of hip pain might be a result of his limp due to a walking cast. He noted that Plaintiff had some memory issues, but it was fine for Plaintiff to drive. Tr. 317-318. Plaintiff returned to Dr. Kanos in August 2007 with complaints that he could not taste or smell, had rage outbursts three to five times per week, had

5

difficulty understanding spoken language, and had memory loss, headaches, and low back and leg pain. Tr 323.

Plaintiff was treated in the emergency room in September 2007 after reportedly having rage outbursts and throwing his shoe at his wife the night before. He was diagnosed with status post traumatic brain injury with behavioral issues and headaches. Tr. 334-335.

Dr. Lary Korn performed a consultative examination at the request of the State agency in October 2007. Plaintiff reported he had "lost his ability to do numbers," could not multitask, and had outbursts of rage. Dr. Korn diagnosed traumatic brain injury and opined that Plaintiff's deficits "appeared to be of a primarily cognitive and emotional nature, though he does have some other nagging injuries of a milder nature." He recommended that Plaintiff obtain a mental health assessment. Tr. 338-341.

On October 17, 2007, Plaintiff was examined by Dr. Randel Jones, a psychologist, at the request of the State agency. Plaintiff reported he could not work because he was in constant pain, had poor memory, had difficulty controlling his anger, and was prone to explode over minor frustration. Tr. 346. Examination revealed that Plaintiff's speech was unremarkable, he was able to maintain attention and concentration, his memory was grossly intact, his mood was dysphoric, and his affect was blunted. IQ testing was in the borderline, below average range and a memory test indicating his memory functioning was in the low average range. A personality assessment indicated a socially reserved and fairly competitive individual. Dr. Jones diagnosed major depressive disorder and cognitive disorder secondary to traumatic brain injury. He noted that Plaintiff was able to understand and follow complex instructions and maintained task investment for a two and one-half hour period of time. Dr. Jones opined that Plaintiff had sufficient intellectual ability to perform

6

simple, routine, repetitive tasks, and that based on Plaintiff's reporting he would have difficulty utilizing these skills in a reliable and consistent manner due to depression, diminished emotional control, and problems retaining and retrieving incident information. Tr. 346-350.

On October 24, 2007, Plaintiff was examined by Dr. James Hudson, a primary care physician. He complained of bilateral knee pain, forgetfulness, decreased but improving concentration, and that he experienced verbal and physical outbursts. Tr. 384.

On November 7, 2007, State agency physician Dr. Steven Fass reviewed Plaintiff's medical records and completed a physical residual functional capacity ("RFC") assessment. He opined that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand, sit and walk for six hours in an eight-hour day; occasionally climb ramps and stairs and balance; and never climb ladders, ropes, or scaffolds. Dr. Fass thought that Plaintiff should avoid even moderate exposure to hazards. Tr. 351-358.

Dr. Larry Clanton, a State agency psychologist, reviewed Plaintiff's medical records and completed a mental RFC assessment in November 2007. He opined that Plaintiff could remember location and work-like procedures, could carry out very short and simple instructions, would work best in situations that did not require on-going interaction with the public, could interact with peers and co-workers, and would respond appropriately to changes in a routine work setting. Tr. 359-375.

On November 27, 2007, Plaintiff complained to Dr. Hudson that he got agitated easily and had constant and chronic pain, but that Ultram helped manage his pain. Tr. 383. Dr. Hudson diagnosed Plaintiff with depression/anxiety. Plaintiff returned to Dr. Hudson in February 2008. Tr. 422. In May 2008, Plaintiff complained of multiple joint pains, but reported that Valium was controlling his anxiety and outbursts, and his depression was improved. Tr. 421.

In February 2008, State agency physician Dr. Carl Anderson reviewed Plaintiff's medical records and completed a physical RFC assessment. Dr. Anderson opined, similarly to Dr. Fass, that Plaintiff could perform a range of medium work. Tr. 411-418.

In August 2008, Plaintiff reported to Dr. Hudson that Valium was no longer controlling his anxiety. Dr. Hudson prescribed Zoloft. Tr. 420. An x-ray of Plaintiff's lumbosacral spine at Greenville Radiology in August 2008 indicated some degenerative changes. Tr. 423. In February 2009, Plaintiff reported his pain was better. Tr. 429. Dr. Hudson completed a check-the-box-type form, in which he opined that Plaintiff's medical condition would probably cause chronic pain, his pain would distract him in job settings, his pain would increase with physical activity, and Plaintiff was not capable of full-time sedentary work. Dr. Hudson explained that Plaintiff had degenerative arthritis of the lumbar spine and knees that limited him physically and contributed to his depression and anxiety. Tr. 427-428. In April 2009, Dr. Hudson wrote a letter indicating that Plaintiff was determined to be disqualified from driving a truck or operating heavy machinery. Tr. 198.

In August 2009, Dr. Roland Knight performed a comprehensive orthopedic examination of Plaintiff. Plaintiff reported he had pain in his cervical spine and both knees since the March 2007 accident. He also reported he was involved in a second accident in December 2008 in which the injury was mainly to his cervical spine. Plaintiff also complained of low back pain. He rated his pain as three out of ten localized to the lumbosacral region. Examination revealed that Plaintiff walked with a limp, did not use an assistive device, and had only mildly restricted lumbar motion. Dr. Knight diagnosed Plaintiff with mild degenerative arthritis of his knees and feet and cervical spondylosis (degenerative arthritis of the spine). He opined that Plaintiff's impairments limited his ability to do heavy lifting or walk or stand for a long time. Tr. 435-437.

Dr. John Whitley, a psychologist, also examined Plaintiff in August 2009 at the request of the Commissioner. Tr. 450-454. Plaintiff reported he could follow basic directions, bathe and dress himself, and cook simple items on the stove. Tr. 451-452. He drove, although only locally, needed assistance shopping because his reading skills had decreased, played games on the computer, took out the trash, and fed his animals. Dr. Whitley noted that Plaintiff's immediate and remote memory were grossly intact, Plaintiff was moderately depressed, and Plaintiff was not overly frustrated. Dr. Whitley diagnosed possible dysthymic disorder and possible cognitive disorder. Tr. 451-353.

Dr. Robert Moss, a psychologist, examined Plaintiff in September 2009 at the request of Plaintiff's attorney. Tr. 455-460. Dr. Moss diagnosed Plaintiff with cognitive disorder and personality change, both due to traumatic brain injury, as well as severe major depressive disorder. He opined that Plaintiff had marked impairment in memory and concentration, marked to extreme impairment in social functioning, and a moderate to marked impairment in independent functioning. Tr. 459-460.

## **HEARING TESTIMONY**

Plaintiff testified that he finished the seventh grade and last worked for a trucking company he owned. Tr. 37-38. He said that after his motorcycle accident, he had short-term memory problems and problems with his mood. Tr. 39-40. He also alleged chronic low back pain. Plaintiff estimated he could walk one hundred yards, stand for fifteen or twenty minutes, sit for five or ten minutes at a time, and lift five or ten pounds. Tr. 40-41. He stated that he did not do housework, grocery shopping, cooking, or yard work, and did not use a computer. Tr. 41-42, 48-49.

**DISCUSSION**

Plaintiff alleges that: (1) the ALJ erred in the assessment of his RFC; (2) the ALJ erred in finding that he was disabled as of his 55th birthday rather than on the alleged onset date of March 22, 2007; (3) the ALJ failed to give sufficient weight to the opinion of his treating physician; (4) the ALJ erred in the evaluation of his pain; and (5) the ALJ's decision is not supported by substantial evidence. The Commissioner contends that the decision that Plaintiff was not disabled within the meaning of the Social Security Act is supported by substantial evidence[1] and free from harmful legal error.

A. RFC/Substantial Evidence

Plaintiff appears to allege that the ALJ erred in evaluating his RFC because he failed to properly consider the long-term cognitive, behavioral, and depressive symptoms that resulted from his total brain injury. He argues that the ALJ erred by simply comparing his impairments related to depression to the mental Listing of Impairments ("Listings"), see 20 C.F.R. Pt. 404. Subpt. P., App.1, rather than considering the symptoms that resulted from his traumatic brain injury.[2] The

---

[1]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

[2]Plaintiff argues that the ALJ ignored that Plaintiff was referred to a traumatic brain injury center, but could not afford treatment. A notation in Plaintiff's records indicates that Plaintiff went to a traumatic brain injury meeting, but walked out. Tr. 323. As discussed below, the ALJ adequately discussed the medical evidence in determining Plaintiff's limitations from his mental impairments.

Commissioner argues that the ALJ reasonably accounted for the limitations caused by Plaintiff's traumatic brain injury and that substantial evidence supports the RFC found by the ALJ.

The ALJ's determination that Plaintiff had the physical and mental RFC to perform a range of unskilled, light work from March 2007 (when he alleged he became disabled) until September 2008 (when Plaintiff turned 55 and thus was found presumptively disabled under the medical-vocational guidelines, also known as the "Grids," 20 C.F.R. Pt. 404, Subpt. P, App. 2) is supported by substantial evidence. The ALJ's RFC assessment should be based on all the relevant evidence. 20 C.F.R. § 404.1545(a). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...." SSR 96-8p. The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule. Id.

Here, the ALJ properly included a narrative discussion describing how the evidence supported his conclusions concerning Plaintiff's RFC. This discussion included the objective and subjective medical findings and nonmedical evidence including Plaintiff's daily activity. The ALJ identified Plaintiff's functional limitations and assessed his work-related abilities on a function-by-function basis.

Contrary to Plaintiff's assertions, the ALJ reasonably accounted for the limitations caused by Plaintiff's traumatic brain injury. The ALJ found that Plaintiff's severe impairments included a cognitive disorder, which resulted from his traumatic brain injury, and depression. Tr. 12. He further found that these impairments caused Plaintiff to have a marked limitation with regard to

concentration, persistence, and pace. Tr. 14. Because of this, the ALJ limited Plaintiff to performing only simple, repetitive, and routine one- and two-step tasks. Tr. 22. The ALJ also concluded, based on Dr. Jones' findings that Plaintiff had marked difficulty controlling his emotion and was prone to overreact to minor frustration (Tr. 19), that Plaintiff had moderate problems with social interaction. Based on these limitations, the ALJ determined that Plaintiff could have no contact with the public. Tr. 22.

Plaintiff appears to argue that the ALJ only evaluated his mental impairments under the Listings with regard to depression. Review of the ALJ's decision, however, reveals the ALJ generally evaluated Plaintiff's mental impairment in the functional areas listed in the general section for mental disorders (§ 12.00). As specifically noted by the ALJ, Plaintiff and his attorney at the time did not allege that he had an impairment that met or equaled the severity of one of the Listings, and Plaintiff did not meet his burden of presenting medical evidence that supports such a finding. See Tr. 13. Plaintiff currently has not identified and has not presented evidence that he meets or equals one of the Listings. It is the claimant's burden to show that he or she had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). Additionally, the ALJ discussed Plaintiff's mental impairments at length in determining his RFC. See Tr. 18-19.

In his Brief, Plaintiff appears to argue that the ALJ failed to properly consider certain symptoms of his traumatic brain injury. As discussed above, the ALJ properly considered Plaintiff's mental impairments. Plaintiff urges the Court to consider his argument in light of a report from Dr. Robert Brabham, a psychologist, which is dated June 8, 2011 (well after the ALJ's decision and the Appeals Council denial of Plaintiff's request for review) and is attached to Plaintiff's Brief. Plaintiff

fails to show that Dr. Brabham's report[3] should be considered by this Court. "Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the [Commissioner's] decision is supported by substantial evidence." Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972); see also 42 U.S.C. § 405(g). The evidence submitted by Plaintiff is not part of the administrative record. Thus, the Commissioner's decision should not be reversed based on this evidence as it is not part of the administrative record. Further, Plaintiff has not asked this Court to remand this case pursuant to Sentence Six or demonstrated that this evidence is new, that it is material, and that there was good cause for failing to submit it earlier.

Plaintiff argues that the ALJ's determination that he did not become disabled until September 28, 2008 is not supported by substantial evidence. In particular, he argues that the ALJ erred in determining that the objective evidence obtained after the hearing corroborated his pain such that he was found disabled after September 2008, but not before. Plaintiff appears to argue that this objective evidence is similar to that which was in the record prior to September 2008, such that he should have been found disabled before the later date. The ALJ, however, also noted that Plaintiff indicated at a post-hearing consultative examination with Dr. Knight that he was involved in a second accident on December 1, 2008, in which he was rear-ended by a vehicle and sustained injuries to his spine. See Tr. 42, 435. Although the ALJ did assess a new RFC beginning September 2008 based in part on new objective medical evidence, review of the new RFC reveals that it added very few new limitations, and these limitations would not have changed the result prior to September 2008.

---

[3]It does not appear that Dr. Brabham examined Plaintiff, but was "given details concerning [Plaintiff] and asked to respond to questions concerning the symptoms and limitations that **might** result from such an injury as he suffered." Attachment to Plaintiff's Brief (emphasis added).

13

As of September 2008, the ALJ found that Plaintiff could never (rather than occasionally) crawl and occasionally (rather than frequently) balance, stoop, kneel, and crouch. See Tr. 22, 15. The jobs the VE testified that Plaintiff could perform (hand packer, inspector, and housekeeper ( Tr. 56-57)) involve no balancing or crawling, and at most occasional crouching, stooping, and kneeling. See U.S. Department of Labor, Dictionary of Occupational Titles (4th ed., rev. 1991)("DOT") Nos. 753.687-038, 323.687-014, and 741.687-010.[4]

The main reason the ALJ found Plaintiff disabled in September 2008 was that Plaintiff changed age categories under the Grids because he reached the age of 55, and thus was found disabled at step four of the sequential evaluation process.[5] Prior to September 2008, Plaintiff was found to be not disabled under § 202.11 of the Grids because he was closely approaching advanced age, limited to light work, had a limited or less education, and had skilled or semi-skilled work experience with skills which were not transferable. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.11. As the ALJ found that Plaintiff was restricted to less than a full range of light work, he properly went to step 5 and obtained testimony from the VE which he used to determine that other work existed in significant numbers in the national economy that Plaintiff could perform. After September 2008, Plaintiff was found to be disabled under § 202.02 of the Grids because he was of

---

[4]The ALJ specifically made a finding that the VE's testimony was consistent with the information contained in the DOT. Tr. 25, see Tr. 57.

[5]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

advanced age, limited to light work, had a limited education, and had skilled or semi-skilled work experience with skills which were not transferable. See id., § 202.02.

C. Credibility/Pain

Plaintiff appears to allege that the ALJ improperly discounted his credibility based only on a lack of objective medical evidence. Plaintiff also argues that the objective medical evidence, particularly the March 2007 spinal x-rays, supports his allegations of disabling pain. The Commissioner argues that the ALJ reasonably discounted Plaintiff's subjective complaints by articulating specific reasons which are supported by substantial evidence.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ's decision to discount Plaintiff's credibility is supported by substantial evidence and correct under controlling law. In his decision, the ALJ found that Plaintiff was not fully credible

15

based on the medical and nonmedical evidence. As discussed above, the ALJ's decision is supported by the medical evidence.[6] The ALJ's decision is also supported by Plaintiff's activities of daily living. He reported to Dr. Whitley during a post-hearing consultative examination that he could bathe and dress himself, cook simple items on the stove, drive, take out the trash, play games on the computer for two hours per day, attend appointments, and feed his animals. Tr. 451-452. Plaintiff also received only conservative treatment for his allegedly disabling pain. Tr. 20. Plaintiff reported that his pain medications were effective in relieving his pain. See Tr. 20, 383, 429. The ALJ also noted that other than treatment, Plaintiff did not pursue any other measures to relieve his pain. See Tr. 20. The ALJ also properly discounted Plaintiff's credibility based on the inconsistencies between Plaintiff's testimony and the evidence of record. See Mickles v. Shalala, 29 F.3d at 930. The ALJ noted that Plaintiff alleged that he could not read and write since his accident, yet testing by consultative examiners showed that this was not entirely accurate. Tr. 17. The ALJ also noted that Plaintiff made inconsistent statements about the extent of his activities of daily living. Tr. 14. At the hearing, Plaintiff reported much more restrictive activities than he did to Dr. Whitley after the hearing.

    D.    Treating Physician

Plaintiff alleges that the ALJ erred in discounting the opinion of Dr. Hudson, his treating physician, that his pain would distract him in a job setting and impair his ability to perform daily activities, and/or work; he was not capable of full time sedentary work; and he suffers from

---

[6]Although Plaintiff points to the March 2007 x-rays as being supportive, they revealed degenerative changes to his spine. There is no indication that these degenerative changes were caused by Plaintiff's motorcycle accident. Prior to the accident, presumably with these degenerative changes, Plaintiff was able to work as a truck company owner. Further, the ALJ accounted for these degenerative changes by limiting Plaintiff to a reduced range of light work.

degenerative arthritis in his lumbar spine and knees.[7] The Commissioner contends that the ALJ reasonably discounted Dr. Hudson's opinion which was an opinion on an issue reserved to the Commissioner and thus was entitled to no special significance.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist

---

[7]Plaintiff also alleges that the ALJ erred in discounting Dr. Hudson's opinion because Dr. Hudson appeared to be overly sympathetic to Plaintiff and invested in the outcome. He argues that this implies that Dr. Hudson stood to gain monetarily, when he did not. Review of the ALJ's decision indicates that the ALJ does not imply monetary gain on Dr. Hudson's part. An ALJ may reject a treating physician's opinion over doubts about the physician's impartiality, particularly since treating physicians can be overly sympathetic to their patients' disability claims. See Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006); Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001). Even if this statement is improper, it is at most harmless error, as the ALJ gave numerous valid reasons for discounting Dr. Hudson's opinion.

in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to discount Dr. Hudson's opinion is supported by substantial evidence. The first and third parts of Dr. Hudson's opinion, that Plaintiff's pain would impair his ability to perform work and that Plaintiff had degenerative arthritis in his knees and spine, are not in dispute. As discussed above, the ALJ limited Plaintiff to performing a reduced range of light work based on Plaintiff's impairments (including Plaintiff's severe impairments of cervical and lumbar spine degenerative disc disease and right knee degenerative joint disease), and Plaintiff's subjective complaints to the extent that they were credible. The other part of Dr. Hudson's opinion, that Plaintiff could not perform full-time sedentary work, is a conclusory opinion of disability which is not controlling since the issue of disability is the ultimate issue in a Social Security case and the issue is reserved for the Commissioner. See 20 C.F.R. § 404.1527(e)(1); Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir. 1994); see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)(statements that a claimant could not be gainfully employed are not medical opinions, but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner); King v. Heckler, 742 F.2d 968 (6th Cir. 1984); Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir.1984).

The ALJ specifically articulated reasons which are supported by substantial evidence for discounting Dr. Hudson's opinion. The ALJ properly discounted Dr. Hudson's opinion because it was inconsistent with Dr. Hudson's office notes. See Craig, 76 F.3d at 590 (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own treatment

18

notes). The ALJ noted that Plaintiff's physical examinations were largely normal. Tr. 21. The ALJ also properly discounted Dr. Hudson's opinion because it was inconsistent with that found by examining physician Dr. Korn and examining psychologist Dr. Jones. Dr. Hudson, a family physician, is not a specialist in either mental illness or orthopedics.[8] Additionally, the ALJ noted that Plaintiff's opinion appeared to be premised on Plaintiff's reports of pain. Tr. 21. Plaintiff, however, reported to Dr. Hudson that his pain medications were helping alleviate his pain. See Tr. 383, 439.

## **CONCLUSION**

Despite Plaintiff's claims, he fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this

---

[8]Plaintiff argues that this is an improper basis to discount Dr. Hudson's opinion. The regulations, however, specifically provide that this is a factor to be considered. See 20 C.F.R. § 404.1527(d)(5). Further, although Plaintiff received orthopaedic care after the accident, there are no statements from those medical providers that would contradict the ALJ's finding that Plaintiff could perform a limited range of light work. The ALJ also considered the opinions of mental health specialists who examined Plaintiff.

19

Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

> RECOMMENDED that the Commissioner's decision be **affirmed**.

Joseph R. McCrorey
United States Magistrate Judge

February 21, 2012
Columbia, South Carolina